**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| COLONY INSURANCE COMPANY, ) | | |
| a Virginia corporation, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| vs. ) | Case No. 07-CV-136-GKF-FHM | |
| ) | | |
| DEANZA JONES, an Oklahoma resident, ) | FILE UNDER SEAL | |
| ROBBIE BURKE, Special Administrator ) | | |
| of the Estate of AURORA ESPINAL-CRUZ, ) | | |
| ) | | |
| Defendants. ) | | |

## OPINION AND ORDER

This matter comes before the court on the Motion for Summary Judgment on the Garnishment Claim [Doc. No. 173] filed by plaintiff Colony Insurance Company ("Colony"). Defendant Robbie Burke, Special Administrator of the Estate of Aurora Espinal-Cruz, opposes the motion. For the reasons set forth below, plaintiff's motion is granted.

### I. Background/Procedural Status

On January 27, 2002, Aurora Espinal-Cruz, an infant in custody of the Oklahoma Department of Human Services ("DHS"), died of an untreated respiratory infection while in the care of her foster mother, Deanza Jones. Robbie Burke, the special administrator of the baby's estate, sued Jones for negligence/wrongful death in Tulsa County District Court. Prior to trial, Jones requested that Colony and United National Insurance Company, both of which had issued claims made foster care liability insurance policies covering her, tender applicable policy limits to settle the case. However, the insurers declined to do so. At the conclusion of the wrongful death trial, a unanimous jury returned a $20 million verdict in favor of the Estate and against Jones.

Subsequently, Colony filed the instant declaratory judgment action against Jones and the

Estate, seeking a determination of coverage rights with respect to the policy it had issued to Jones and the judgment obtained by the Estate. Jones counterclaimed for breach of contract and bad faith breach of contract. The Estate also counterclaimed against Colony for breach of contract, bad faith breach of contract, reformation of contract, and garnishment. The court granted in part Colony's Motion for Judgment as a Matter of Law [Doc. No. 43] on all claims of the Estate except its garnishment claim. [Doc. No. 94]. Subsequently, Jones and Colony settled. Pursuant to their settlement agreement, Colony paid well in excess of the policy limits for the two policy years at issue to Jones, who was in turn required to pay 75 percent of the net proceeds to the Estate.

Colony now seeks summary judgment on the Estate's sole remaining claim for garnishment, asserting that because the Estate has no greater rights in a garnishment claim than that of Jones, Jones has released the policies to Colony, and the Estate has received more than the policy limits from Colony, the Estate has no right to make a claim for garnishment. [Doc. No. 173, p. 2]. The Estate argues that the monies paid by Jones were merely in partial satisfaction of her debt to the Estate for the underlying judgment and that the Estate's garnishment rights have not been extinguished.

## II. Undisputed Material Facts

1. On May 6, 2009, Colony and Jones entered into a Settlement Agreement and Release ("Settlement Agreement") pursuant to which they released all existing and potential future claims against each other. [Doc. No. 173, Plaintiff's Statement of Material Facts, ¶1 and Ex. 1, Settlement Agreement and Release].

2. Under the Settlement Agreement, Colony paid $4,000,000 to Jones as follows:

> The Settlement Amount shall be paid in two parts. $300,000 shall be paid as the entire policy limit for Policy No. AP508287 for the policy period of March 2006 to March 2007. $3,700,000.00 shall be paid to cover any remaining amounts that may be owed under such policy including all interest, fees, costs or other Supplementary Payments, etc., as well as any other damages or injuries, past or future, that were incurred by Jones.

[Doc. No. 173, Plaintiff's Statement of Material Facts, ¶2 and Ex. 1, Settlement Agreement, ¶B.1.c.[1]

3. Colony's payment of the $4,000,000 specifically included any costs, interest or other Supplemental Payments owed or potentially owed by Jones to the Estate:

> Jones acknowledges that any Supplementary Payments (a term defined in Colony's Policies) including but not limited to any premium on appeal bonds, all reasonable expenses, all costs taxed against Jones, and pre- and post-judgment interest, or any other Supplementary Payment that may be owed to Jones under Colony's Policies are included within Colony's payment.

[Doc. No. 173, Plaintiff's Statement of Material Facts, ¶3 and Ex. 1, Settlement Agreement, ¶A.13].

4. Jones agreed that the payment by Colony would "constitute a full and complete release of the Colony Policies." [Doc. No. 174, Plaintiff's Statement of Material Facts, ¶4 and Ex. 1, Settlement Agreement, ¶B.3.].

5. Jones also agreed to pay the Estate pursuant to the separate agreement between Jones and the Estate and to indemnify and hold Colony harmless if Jones did not make such a payment, as follows:

> (a) Upon receipt of the Settlement Amount from Releasee [Colony], the Releasor

---

[1]Colony issued Policy Number AP508287, entitled Foster Parents Liability Insurance, for a policy period of March 7, 2005, to March 7, 2006. Colony renewed the policy in 2006 with slight changes and with effective dates of March 7, 2006 to March 7, 2007. [Doc. No. 84, Plaintiff's Statement of Material Facts, ¶9 and Exs. 9 and 10 thereto].

> [Jones] agrees to pay the Estate pursuant to the terms and conditions stated in the settlement agreement with the Estate, attached as Ex. A.
>
> (b) The Releasor [Jones] agrees to indemnify and hold harmless the Releasee [Colony] to the extent that the Releasor [Jones] does not pay the Estate pursuant to the terms and conditions stated in the settlement agreement with the Estate, attached as Ex. A.

[Doc. No. 174, Plaintiff's Statement of Material Facts, ¶5 and Ex. 1, Settlement Agreement, ¶B.3. (a) and (b).

6.  The agreement between Jones and the Estate states in pertinent part:

> Mrs. Burke, on behalf [of] the Estate of Aurora Espinal-Cruz, agrees to limit execution against Jones to 75% of net monies recovered (after deduction for litigation costs) for Mrs. Jones's claims against Colony for its egregious and ongoing breach of contract and bad faith conduct.

[Doc. No. 173, Plaintiff's Statement of Material Facts, ¶6 and Ex. 2, Agreement, ¶3].

7.  Jones paid the Estate a few thousand dollars less than $3,000,000 from the settlement proceeds from Colony. Counsel for the Estate acknowledged that Jones had made the payment, without specifying the amount. [Doc. No. 173, Plaintiff's Statement of Material Facts, ¶7 and Ex. 3, 7/17/09 Hearing Transcript at pp. 9-10].

8.  Both the 2005 Colony Policy and the 2006 Colony Policy have policy limits of $300,000 for each occurrence. [Doc. No. 173, Plaintiff's Statement of Material Facts, ¶8, and Doc. No. 1-1 and 1-2 (Exs. 1 and 2 to Complaint)].

9.  On May 15, 2009, Colony and Jones dismissed their claims against each other. [Doc. No. 173, Plaintiff's Statement of Material Facts, ¶9, and Doc. No. 161].

### III.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  When applying this standard, a court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  *Wolf v. Prudential Insurance Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995).  The movant for summary judgment must meet the initial burden of showing the absence of a genuine issue of material fact, then the nonmovant bears the burden of pointing to specific facts in the record "showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  *Id*.

## IV.  Analysis

This court has already ruled that the Estate, as a judgment creditor of Jones, does not have standing to bring a bad faith breach of contract action against Jones's insurer, Colony. [Doc. No. 43].  Thus, the Estate's sole remaining claim against Colony is for garnishment.  The issue now before the court is whether the settlement between Jones and Colony and payment of in excess of policy limits, nearly three-fourths of which were in turn paid to the Estate, extinguishes the garnishment claim.

It is well settled under Oklahoma law that a third party claimant such as the Estate lacks standing to bring a bad faith breach of contract claim against an insurer.  *Gianfillippo v. Northland Cas. Co.,* 861 P.2d 308, 309-10 (Okla. 1993); *Allstate Insurance Co. v. Amick,* 680 P.2d 362, 364 (Okla. 1984).

Oklahoma law is equally clear that a judgment creditor is not entitled to pursue garnishment against an insurer on the basis of bad faith breach of the insurance contract.  In *Wilson v. Gipson,* 753 P.2d 1349, 1356 (Okla. 1988), the court stated:

> ...it has been held....that a garnishment proceeding by judgment creditors of the insured *will not lie* against the insurer on the ground that *it was negligent or acted in bad faith in failing to settle the claims against the insured* for the reasons that *the insured's cause of action sound in tort* and is therefore an unliquidated tort and that it is *not a chose in action subject to garnishment*.

*Id.,* citing *Fidelity and Casualty Co. of New York v. Southall,* 435 P.2d 119, 122 (Okla. 1967) (emphasis in original). The court in *Wilson* noted this view appeared to be the "majority rule," *Id* and concluded, "A party may assert his own legal rights and interests, but may not assert a claim based on the rights or interests of third parties. *Id.,* citing *Oklahoma Alcoholic Beverage Control Board v. Parkhill Restaurants, Inc.,* 669 P.2d 265 (Okla. 1983).

Further, a carrier's liability is limited by the contract. *Carney v. State Farm Mut. Auto. Ins. Co.,* 877 P.2d 1113, 1119 (Okla. 1994). The Oklahoma Supreme Court has held that insurers are not liable in garnishment actions for prejudgment interest in excess of policy limits. *Parish v. Henry,* 97 P.3d 646, 648 (Okla. 2004); *compare Carney,* 877 P.2d at 1119; and *Federal Insurance Company v. Tri-State Insurance Company,* 157 F.3d 800, 805-06 (10th Cir. 1998). An insurer's liability to its insured can be neither created nor enlarged in a garnishment proceeding. *Culie v. Arnett,* 765 P.2d 1203, 1206 (Okla. 1988). The court in *Culie* reasoned:

> In a garnishment proceeding, the judgment creditor stands in the shoes of the judgment debtor to enforce a liability owed to the latter by a third party–the garnishee. The former may claim no greater rights against the garnishee than the latter himself possesses.

*Id.* at 1205; *Johnson, by and through Lackey v. Schick,* 882 P.2d 1059, 1061 (Okla. 1994) Here, Colony paid its insured, Jones, in excess of the policy limits and Jones released the policies. Under the terms of the Settlement Agreement, Jones was required to pay the Estate pursuant to the terms and conditions of the agreement between Jones and the Estate. Counsel for the Estate has acknowledged that the Estate had received payment from the Colony/Jones settlement in

excess of the applicable policy limits.  The payment of policy limits extinguished any claim of garnishment the Estate had.[2]

The Estate cites no Oklahoma authority for the proposition that it should be permitted to maintain the garnishment action in the face of the insurer's payment to the insured of four million dollars (far in excess of the policy limits) and the insured's payment of nearly three million dollars (also far in excess of policy limits) to the Estate.  Instead, the Estate argues:

> The potential end result and ramifications of this Court's rulings on the various matters before it are many.  They include: allowing the tortfeasor and her insurers the power to collude to prevent the Estate of a 7-month-old foster-child from enforcing its rights for her suffering and wrongful death; permit the tortfeasor to profit as a result of her own gross negligence in permitting this foster-child infant to die so long as she cooperated with her insurers and their counsel in their ongoing efforts to avoid or minimize their obligations and responsibility to the Estate and for the underlying jury verdict.  The injustice is staggering and should not be condoned and supported by the Court.

[Doc. No. 180, p. 2].  Notwithstanding this rhetoric, the Estate has presented no evidence of collusion between Colony and Jones.  To the contrary, the evidence presented suggests the insurer and insured reached a good faith settlement, pursuant to which the insurer paid far in excess of policy limits to Jones in the face of Jones's bad faith claims.  Jones, in turn, turned over nearly three million dollars of the proceeds in compliance with her agreement with the Estate.  The Estate's argument would be persuasive had Colony and Jones colluded in an attempt to prevent the Estate from recovering policy limits, but that is not the case here.

The death of infant Aurora Espinal-Cruz was an unspeakable, preventable tragedy.  The

---

[2] The Agreement between Jones and the Estate, whereby the Estate agreed "to limit execution against 75% of net monies recovered (afer deduction for litigation costs) for Mrs. Jones's claims against Colony for its egregious and ongoing breach of contract and bad faith conduct," does not alter the analysis.  The Estate may claim no greater rights against Colony than Jones herself possesses.

Estate has rightfully and successfully sought monetary recompense for her death within the legal system. The parameters of monetary recompense, however, are drawn by the laws of Oklahoma. Under Oklahoma law, a third party claimant such as the Estate is not entitled to pursue a bad faith breach of contract claim against defendant's insurer; a judgment creditor is not entitled to pursue garnishment against an insurer on the basis of bad faith breach of the insurance contract; and the insurer in this case is not required to pay in garnishment more than the limits of the policy.

Here, Colony has satisfied its obligations to the insured and the insured in turn has satisfied its obligations to the Estate. The garnishment claim has been extinguished.

## V. Conclusion

Plaintiff Colony Insurance Company's Motion for Summary Judgment on the Garnishment Claim [Doc. No.173] is granted.

ENTERED this 16th day of February, 2010.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma